EDWARD E. GILLEN COMPANY, Respondent, vs. JOHN H. PARKER COMPANY, Appellant.

*February 5—March 4, 1919.*
*October 11—December 2, 1919.*

*Building contracts: Stipulation as to amount due to subcontractor: Judgment therefor: Payments: Interest: Additional claim for damages on account of delays: Remedies: Contract construed: Liability of general contractor: Damages: Proper elements: Extra services of officers of corporation: Appeal: Waiver of objections: Option to take judgment for reduced amount.*

1. In an action by a subcontractor against the general contractor for a building, a stipulation recited that defendant had agreed to pay plaintiff a certain sum with interest after a specified date, being that part of plaintiff's demand claimed to be due and owing on the contract price, and that plaintiff had executed a voucher for said sum, and then provided that such partial payment and voucher should not prejudice plaintiff's right to recover, in the action, damages claimed by it to have been sustained by reason of delays, for which defendant is alleged to be responsible, in the doing of the work, and that the trial of the action should be confined solely to plaintiff's claim for such damages. *Held,* that at the end of the trial, upon judgment being rendered for plaintiff, the court properly included therein the sum so agreed upon, with interest from the date specified.

2. Upon the motion, presumably made under sec. 2892, Stats., for judgment for the amount fixed in such stipulation, the court might order defendant to satisfy that part of plaintiff's claim and might enforce such order as it enforces a judgment or provisional remedy, without waiting until the termination of

the litigation on the question of damages on account of said delays.

3. The liability admitted by said stipulation was a present liability, payable presently in money, and its payment was not subject to provisions of the contract as to when payments thereon should be made and that such payments should be partly in money and partly in stock of the corporation owner of the building.

4. In an action involving a .claim for damages arising from breach of a contract, where the amount of such damages cannot be ascertained from the contract itself and a consideration of evidence is required, an additional sum may be allowed, equal to interest on the damages recovered at the statutory rate from the time when the breach occurred.

5. Delays in the doing of the work of a subcontractor, for which damages are claimed on the ground that they were caused by defaults of the general contractor, are *held,* upon the evidence in this case, not to have been shown to be the result of the exercise by the general contractor of a power, given to him in the subcontract, to suspend at any time the whole or any part of the work therein contracted for, without compensation to the subcontractor other than extending the time for completing the work.

6. Nor, under other provisions of the subcontract,—including a provision to the effect that should the subcontractor be obstructed or delayed by the neglect or delay of any other contractor there should be an allowance of additional time to him for the completion of his work,—and under the evidence as to letters written by the subcontractor to the general contractor in regard to delays and hindrances to his work, can it be held as matter of law that the allowance of additional time was the sole remedy of the subcontractor for such delays.

7. The subcontract in question having neither expressly provided for liability on the part of the general contractor for delays caused by it, nor expressly excluded its liability for monetary damages for such delays, the general rule applies that where labor and materials are to be furnished by the one party and to be paid for by the other, and the one furnishing such labor and materials is dependent to some extent upon the other party performing his part or providing for the prompt performance by others of a portion of the work, there arises by implication an obligation of such other party, not only to refrain from interfering with or impeding the contractor in the performance of his work, but also to do all that is reasonably necessary in order to enable such contractor to perform

the work; and for a failure in either respect damages can properly be awarded to the party so delayed or impeded.

8. Although the subcontract in question did not make the defendant (the general contractor) a guarantor of the prompt performance by other subcontractors of their respective subcontracts, yet, the jury having been properly instructed that in order to find that defendant unreasonably obstructed or delayed the progress of plaintiff's work they must find that there was some direct interference by defendant or failure to do what it could reasonably be expected to do, under the circumstances, to see that there was no interference by other subcontractors with plaintiff's progress, and the defendant having made no attempt at the trial to separate the delays directly caused by itself and those due to the faults of the other subcontractors and to have the latter excluded from the consideration of the jury, and there having been beyond doubt some delays for which defendant should be held liable in damages to the plaintiff, this court cannot, upon the record on appeal, carve out from the general finding as to the amount of damages such delays as might have been excluded.

9. For delays in the work of a subcontractor for pile-driving, due to the general contractor's wrongful insistence that such subcontractor was bound to remove certain old foundation walls, the general contractor was responsible and liable in damages.

10. Where a corporate subcontractor was a going concern doing other work during the period in which it was performing its subcontract, and did not employ or retain the services of its officers particularly with reference to such contract, and did not actually pay them any more than it would otherwise have done during that year, it cannot recover, as damages on account of delays due to fault of the general contractor, the value of its officers' extra services rendered necessary by said delays.

11. It appearing that there was substantial error in permitting the jury, against objection, to consider in assessing the damages the value of such extra services of plaintiff's officers, a new trial on the question of damages is directed unless plaintiff shall elect to take judgment for the reduced sum remaining after deducting the amount which it claimed on account of such services from the damages found by the jury.

12. Where, in the action for damages on account of said delays, no proper objection was made at the trial to elements of damage which the jury were permitted to consider, this court cannot, on appeal, attempt to pick out, as improper, particular portions of such elements, some parts of which were proper.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Modified and affirmed.*

The defendant, a New York corporation, was the general contractor for the removing of buildings then standing and the construction of a two-story and basement building in the city of Milwaukee, known as the Plankinton Arcade, on a site with north front on Grand avenue, extending from West Water to Second street on the west. The defendant let a number of subcontracts for the doing of the work, and one of such with plaintiff for the pile-driving and work incidental thereto. The general form of these subcontracts was substantially the same.

The plaintiff's contract of January 13, 1916, required the work to be started under it on or before January 14th and to be completed by February 14, 1916.

Article I provided for the work to be done by plaintiff and in substance as follows: All the labor and material required for the furnishing and driving of the necessary piles for the new building; excavating all pier holes for all column foundations, carting such excavated material from the premises, cutting off all the piles in the pier holes to the required levels; the sheet piling and shoring up of the street and alley banks. It also provided that the work was to be done in strict accordance with the plans and specifications and under the direction of the general contractor.

Article VII provided that "the subcontractor shall and will proceed with the work, and every part and detail thereof, in a prompt and diligent manner, and shall and will do the several parts thereof at such times and in such order as the general contractor may direct, and shall and will wholly finish the said work according to the said drawings and specifications and this contract, on or before the 14th day of February, 1916." (A similar provision except for the necessary changes of date appeared in all of the other sub-

contracts.) It also provided that time was made the essence of the contract, and that in default of the completion within the time or times above specified the subcontractor shall pay to the general contractor $100 for every day thereafter that the said work shall remain unfinished as and for liquidated damages, not as a penalty.

"Article VIII. The subcontractor shall not cause any unnecessary hindrance or delay to other contractors on said building, and shall pay all damages done to the work of such other contractor by its employees. Should the subcontractor be obstructed or delayed in the prosecution and completion of the work by the neglect, delay, or default of any other contractor, . . . then there shall be an allowance of additional time beyond the date set for the completion of the said work; . . . and the general contractor shall award the additional time to be allowed, which shall be the same as is allowed to the general contractor by the architects for the same cause; but such extension shall not otherwise affect the obligations of the subcontractor hereunder."

In the provision as to the payment for the work to be done by the plaintiff it was agreed that ninety-five per cent. of such payments was to be in cash and five per cent. paid in certain stock of the company erecting the building. "The final payment shall be made thirty days after the work in this contract is complete, finished, and accepted, . . . and the general contractor shall have received its final payment." A further provision was:

"Article XXIII. The general contractor shall have the right, at any time, to suspend the whole or any part of the work herein contracted to be done, without compensation to the subcontractor, other than extending the time for completing the whole work for a period equal to that of such suspension."

This action was commenced in February, 1917, and the complaint alleged the making of the contract; that the work was completely finished and accepted on or about August 26, 1916; and that final payment became due thirty days

thereafter, and that under the first cause of action there
was due the following items:

The balance upon contract price.. $5,006 99
The balance on agreed price of
    extras ................... 1,395 43    $6,402 42
And the further sum of.........          16,043 54
—being damages accruing to the plaintiff by reason of the
alleged breach by defendant of its implied agreement to do
everything necessary to enable the plaintiff to commence the
work and complete the same within the time specified in the
contract; and that by its failure to permit the plaintiff to
occupy the premises for the doing of its work it was so de-
layed and thereby lost the use of its equipment and appli-
ances and the productive services of its employees and
agents and forced to devote additional labor, engineering
service, and superintendence to said work.

For a second cause of action it alleged an extra con-
tract for the doing of certain sheet piling in connection with
the same building at the agreed price of $1,625, none of
which had been paid.

Before the trial a written stipulation was entered into:

"Whereas the defendant, *John H. Parker Company,* has
agreed to pay that portion of the plaintiff's demand in the
above entitled action which is claimed by plaintiff to be due
and owing upon the contract price specified for the work
described in the complaint, and whereas the said parties have
agreed that such portion of the plaintiff's demand reason-
ably amounts to the sum of $8,275 and plaintiff has executed
and delivered to defendant a voucher for said amount, a
copy of which voucher is annexed hereto and marked
Exhibit 'A,' and the defendant has agreed to pay said
amount to plaintiff with interest from June 1, 1917, unless
paid prior thereto:

"Now, therefore, it is stipulated and agreed that said par-
tial payment and the execution and delivery of said voucher
shall not be deemed an accord and satisfaction between the
parties and shall be without prejudice to the right of the
plaintiff to recover damages sought to be recovered in the

above entitled action in consequence of the alleged breach by the defendant of the alleged implied obligation to avoid hindering and obstructing the work of the plaintiff.

"It is further stipulated and agreed that the plaintiff shall make no claim upon the trial of the above entitled action to the payment of any portion of the stipulated contract price, but that the above entitled action shall be confined solely to the plaintiff's claim for damages; and it is further stipulated and agreed that the voucher hereunto annexed shall not be used in said action by either party and shall be excluded from evidence if offered." Dated May 25, 1917.

The receipt was as follows:

"Received of the *John H. Parker Company* $8,275, being the amount due the undersigned upon the contract price agreed to be paid the undersigned for work, labor, and materials furnished in connection with the pile-driving contract for the construction of the certain structure known as the Plankinton Arcade in the city of Milwaukee, and in consideration of said payment the undersigned hereby releases the Plankinton Arcade Company from any and every claim which the undersigned may have against it in any way arising out of or connected with the construction of said Plankinton Arcade;" and was signed by plaintiff.

A motion was thereupon made by the plaintiff for judgment for the amount claimed to be conceded due and for other relief before another branch of the circuit court than that which tried the cause. The motion for judgment was denied, but amended pleadings were permitted.

By supplemental complaint the plaintiff alleged substantially both causes of action as in the original complaint, but inserting as an additional allegation in each the making of the stipulation above set forth.

By supplemental answer the defendant admitted the making of such stipulation and that

"the defendant agreed that the amount of the plaintiff's claim upon the contract price for work mentioned. and described in the complaint lawfully amounted to the sum of $8,275 and that the defendant was indebted to the plaintiff upon the contract price of said work in said sum, and

the defendant agreed to pay, and the plaintiff agreed to accept, said sum as and for the unpaid portion of the contract price for said work; but this defendant denies that it compromised and agreed to pay the same on or about the 1st day of June, 1917, and alleges that the said agreement was a stipulation evidentiary in its character and that said amount was only payable under the terms of the contract when the amount due under the contract was, by the terms of the contract, due from the defendant to the plaintiff."

The plaintiff complied with a written order given it by the defendant of January 8th and brought one of its piledrivers to the edge of the site in readiness to proceed on January 13th, the date of the contract. By January 20th it had its second pile-driver near by. On February 15th it was first able to place one of its pile-drivers into the excavation ready to commence driving piles. Numerous interruptions were had in its work, largely on account of the failure of the contractor for the excavation, whose work necessarily preceded that of the plaintiff, to make sufficient progress. The work appeared to have been, at the respective dates, as follows: February 24th the excavation was 50 per cent. finished, the piling 17 per cent.; on March 18th the excavating 76 per cent., the piling 50 per cent.; April 9th the excavating 88 per cent., the piling 61 per cent.; by May 25th the piling was 77 per cent. completed; on June 17th the excavating was completed and the piling then 82 per cent. completed. Subsequent interruptions occurred, and on June 26th plaintiff started again with the piling and by July 7th had finished it. Some other details of the work were subsequently done by plaintiff and finished about August 26th.

It appeared that on February 12, 1916, an injunction was obtained and thereafter continued preventing the defendant and the American Wrecking Company, the then subcontractor for the demolishing of the buildings on the site, from interfering with the work with the ground floor

and certain portions of the so-called Birchard Block, a building on the northeast corner of the site and then occupied by the A. Spiegel Drug Company under a lease which did not expire until May 1, 1916. On March 14th a stipulation was made in the suit in which the injunction was obtained by which the drug company consented to give up possession of said premises to the defendant on April 1st, rather than wait until the termination of the lease.

On the southeast corner of the same site certain stone foundations had not been removed at the time the plaintiff was desirous of driving piles in the same place. Defendant's attention was called to this, and it refused to require the excavating contractor to remove such foundations or do the work itself, insisting that under the contract between the parties hereto it was incumbent upon plaintiff to remove such walls. The matter was taken up by plaintiff with the architects, who determined, under the arbitration clause in the contract, that it was not a part of plaintiff's obligation to remove such wall. After some delay the defendant made arrangements for such removing, causing a delay of from at least ten days to two weeks in plaintiff's work.

At about the time the excavating had reached the Birchard Block in the northeast corner, the American Wrecking Company, which had the subcontract for the wrecking of the building on the site, left the premises, and on April 9th the excavating contractor, being unable to work at this corner, also left the premises and returned under a new or modified contract with the defendant about May 25th. A petition in bankruptcy was filed against the American Wrecking Company June 2, 1916, and about April 7th a new contract was made with the Milwaukee Wrecking Company under which the wrecking of the buildings was finally completed.

There was testimony during the trial that attempts had been made by the defendant to obtain additional shovels or excavators to expedite the work. Defendant offered testi-

mony to show that, owing to the situation and the ·labor
market and questions arising on account of the rules and
regulations of the various unions, such shovels could not be
obtained.    Its superintendent also testified that he had at-
tempted to get the bonding company which had given secur-
ity for the performance of the work by the American
Wrecking Company to take over its work when it became
remiss.

During the period between January 13th and July 7th the
plaintiff took and was doing work on other contracts and
from time to time used portions of its equipment and drivers
on such work, but giving credit on its claim against the de--
fendant for such period of time as such respective items of
equipment were so otherwise used.

September 30, 1916, the plaintiff, on one of the forms of
the defendant, presented its application for final payment on
account of the work done by it.    In such application was the
following: "Damages caused by delays to our work by your
failure to have premises ready for us to proceed at time
agreed, $2,500."    By letter of December 4, 1916, of plaint-
iff to the architects, the plaintiff speaks of this prior claim of
$2,500 and states with reference to it: "This was a lump-
sum estimate.    We have since, with the assistance of a cer-
tified public accountant, gone carefully into the matter and
find this damage to have reached a much larger amount, and
therefore it is omitted from the copy of the statement at-
tached."

At the close of plaintiff's testimony defendant moved for
a nonsuit on the grounds: (1) That upon the express con-
tract in this case there cannot be any implied contract
relating to the subject matter of damages and that the
plaintiff's cause of action is based upon implied contract.
(2) That under the contract there was a provision whereby
plaintiff was to have an extension of time to do its work
equivalent to the delay occasioned it by the architect, the
principal contractor, or a subcontractor; that therefore there

can be no claim for financial damages. It relied on this point upon article XXIII, above stated, providing for a suspension of the work in whole or in part by the principal contractor. (3) That the action was prematurely brought, and no recovery can be had under it because the amount, pursuant to the provisions of the contract, was not due at the time the suit was commenced. Plaintiff's counsel then stated that no claim was made under any implied contract, but under an implied duty arising out of the express contract.

At the close of the testimony the defendant moved for a directed verdict in its favor as to the portions of plaintiff's claim on account of money due, for the reason that the action is prematurely brought, and in relation to the matter of damages for the reasons presented on the motion for nonsuit, and for the further reason that it appears from the testimony that a portion of the delay in the performance of the work was the plaintiff's own delay, and that where delay has occurred, and both the owner and the general contractor have contributed to that delay, the subcontractor cannot recover, because the court will not apportion the results of that delay and give the one any remedy against the other. The defendant's motions for a nonsuit and for a directed verdict were severally denied and due exceptions taken thereto.

The special verdict as answered by the jury found substantially as follows: (1) That the plaintiff was able, ready, and willing, during the time in question, to diligently prosecute the work; (2) that except so far as delayed by defendant plaintiff did prosecute its work with reasonable diligence; (3) that the defendant delayed the plaintiff's work "by failing to make reasonable effort to prepare, or cause the preparation of, the contemplated excavation at a rate which would enable the *Gillen Company* to begin, prosecute, and complete its work within the time fixed by the contract;" (4) that the defendant unreasonably obstructed,

hindered, and impeded the prosecution of the work . by plaintiff; (5) that by reason of what was found in the third and fourth questions the reasonable cost to plaintiff was necessarily increased; (6) that such necessary increase was $7,713.

No requests appear to have been made for the submission of any other than these questions.

Thereupon judgment was entered on April 15, 1918, for the following items:

| | |
|---|---:|
| Damages in special verdict | $7,713 00 |
| Interest thereon from July 7, 1916 | 820 15 |
| Amount admitted in stipulation | 8,275 00 |
| Interest thereon from June 1, 1917, pursuant to stipulation | 433 03 |
| Costs | 149 90 |
| | $17,391 08 |

From such judgment the defendant has appealed.

For the appellant there was a brief by *Bottum, Bottum, Hudnall & Lecher* of Milwaukee, attorneys, and *William F. Kimber* of New York City, of counsel, and oral argument by *F. L. McNamara* of Milwaukee.

For the respondent there was a brief by *Simmons & Walker* of Racine and *James D. Shaw* of Milwaukee, and oral argument by *Mr. Shaw.*

The following opinion was filed March 4, 1919:

ESCHWEILER, J.  The material points upon which the appealing defendant challenges the rulings of the court below and its disposition of the case are substantially as follows:

*First.* In entering judgment for $8,275, the amount fixed by the stipulation recited above of May 25, 1917, on the grounds: (a) that such amount, by the terms of the stipulation referred to, is out of this case and could form no part of the judgment herein; and (b) that in any event it could not be allowed until and after the defendant itself had been paid its final balance due from the owner of the building by reason of the terms of the contract.

*Second.* In allowing interest from July 7, 1916, on the damages found, for the reason that, the claim for such being in the nature of unliquidated damages, interest was not a proper charge upon the same.

*Third.* That by the contract between the parties, particularly articles VIII and XXIII, above quoted, the parties had provided in effect that as between them the remedy plaintiff might have for any delay caused to plaintiff in its carrying on the work was limited solely to an extension of time to be given to plaintiff for its completion of the work beyond the time stipulated in the contract equal to the length of time it was so delayed, and by necessary implication excluding any monetary allowance.

*Fourth.* In permitting the jury to consider improper elements of damages, if any such were to be allowed, in arriving at their verdict, including (a) rental value of plaintiff's plant during such periods of delay; (b) the value of the services of Mr. Gillen, the president and general manager, and Mr. Harrington, the secretary of the plaintiff.

We are satisfied the lower court took the proper view of the stipulation in holding that the purpose and intent was to withdraw, so far as the trial of the case was concerned, any question as to the amount of the items therein included, and to dispense with the necessity of proof being offered by either party on the trial with reference thereto, and that when the trial as to the disputed items was ended and ripe for judgment upon them there then should be included in any judgment the agreed sum of $8,275. The trial court was also right in holding that interest should be allowed by the language of the stipulation itself, and from June 1, 1917.

This stipulated amount was the sum of three of the items, together with some accrued interest, in plaintiff's two causes of action. Defendant executed its voucher therefor and took a receipt from plaintiff as a release for such claims. All this was therefore, by virtue of such stipulation and by the portion of the amended answer quoted above, an admission

and not a denial of liability. It was a present liability and payable presently. *Douglas v. Vorpahl,* 167 Wis. 244, 166 N. W. 833. It could not be controlled as to time of payment by the provisions of the contract relied upon by the defendant, first, because it did not say so, and secondly, because it was an unqualified admission as to an obligation payable in money, while the provision in the contract relied upon provided for the payments to be partly in money and partly in stock of the corporation owner of the building, and it therefore took itself out from the contract.

We are satisfied also that the court below ruled correctly in allowing interest upon whatever sum is properly to be found as the amount of damages for the claim of delay.

While the earlier authorities in this court, which alone are relied upon by appellant, drew the line somewhat strictly as to the allowance of interest in such class of cases where recovery was sought for unliquidated damages, the rule has been extended in later years so as to permit, in cases involving a claim for damages arising from breach of a contract and where the amount cannot be ascertained from the contract itself and requires the consideration of evidence before it can be assessed, a sum to be allowed equal to interest at the statutory rate from the time when the breach occurred, rather as an additional penalty and to more nearly make the injured party whole for the use of the money which has been thus determined to have been withheld from him, than as interest in the ordinary acceptation of the term. Such has been the repeated holding of this court. *Gross v. Heckert,* 120 Wis. 314, 330, 97 N. W. 952; *Bagnall v. Milwaukee,* 156 Wis. 642, 146 N. W. 791; *Voigt v. Milwaukee Co.* 158 Wis. 666, 149 N. W. 392; *Peters v. Nat. S. Co.* 167 Wis. 131, 163, 166 N. W. 43.

Under the third point presented by defendant, namely, that by the terms of the contract itself monetary damages for any delay were by implication excluded, it urges that under article XXIII, above quoted, giving the general con-

tractor the right at any time to suspend the whole or any part of the work without compensation to the subcontractor other than extending the time for completing the work to an equal period, there was in effect such suspension of the work rather than a delay. That it was so considered by the plaintiff is urged by reason of negotiations between the parties at the end of March, pursuant to which plaintiff wrote a letter of confirmation to the effect that plaintiff was to take one of its pile-drivers out of this foundation entirely; it was then to begin driving with its other one and finish a certain portion of the area left outside the Birchard Block; then to proceed in another portion of the area where the excavator was then working, and that as soon as the Birchard Block was razed and the excavating completed, to proceed with the area covered by that block. It further recited that this arrangement is made on plaintiff's part to help overcome the decided delays and extensive expense that it had been subjected to on this site.

No reference, however, was made at any time by either of the parties to this being considered in any way the exercise of any right by the defendant under this particular clause. Neither was it apparently so considered at any time during the trial, nor were any requests made to the court to submit any question possibly arising under this particular clause to the jury, nor was it specified in the motions made by defendant for a nonsuit or directed verdict. There is not sufficient in this letter nor in the testimony to warrant the court on this appeal to now say that there was such an exercise of any power or right given to the defendant under this particular clause, or any such recognition by plaintiff of any such power, that the question of the liability of defendant for the delays in question can be now so determined.

Defendant further urges that by the provisions of article VIII, considered in connection with the provisions in article VII for the payment of $100 for each day's delay as liquidated damages, and the following undisputed facts, it

must be now held as a matter of law that the allowance of additional time for the completion by plaintiff of its part of the work was the sole remedy for the delays:

By a letter written February 11, 1916, when the plaintiff had been unable to start as yet with the pile-driving, although under the contract it was required to have finished the west half of the required area by the 31st of January, it refers to this clause for $100 per day and asks that the same be annulled. No written answer was made to this request, although one of the defendant's officers testified that an oral consent to such an annulment was given, and the defendant appears to have never made any claim as against the plaintiff by reason of such clause.

Again, on March 25, 1916, plaintiff wrote to defendant speaking of the many delays which have prevented it going ahead with the work, and further saying:

"We know they are all well understood by you, and we know that you have made due allowance therefor in considering the time when the work should be finally completed; . . . but we are now in a position where we are obliged to claim further loss of time for reasons that are entirely avoidable."

The letter then speaks of the delay caused by the concrete contractor in starting a concrete elevator and mixer upon the site, so obstructing them in their work that they have to stop their pile-driving, and closed by saying:

"We regard the obstructing and hindering of our work in this manner not only as a good and sufficient excuse for extending the time within which our work should be completed, but as a distinct loss and damage to our company, and, as stated, we hope you will take advantage of your written agreement with the subcontractor to stop it."

All this, however, is insufficient, in our judgment, to support such contention.

Neither can we say that there is any such conclusive effect from the language of these provisions in the contract, par-

ticularly the language, so much relied upon by defendant, in article VII to the effect that in the event the subcontractor be obstructed or delayed by the neglect or delay of any other contractor there shall be an allowance of additional time to him for the completion of the work beyond the specified time. Several cases are cited by appellant which it claims sustain its position on this point, but no good purpose would be served by discussing them and pointing out the distinctions that exist between the language of the contracts therein involved and the present one. The present contract neither expressly assumes liability by the general contractor for delays caused by it, nor does it expressly exclude its liability for monetary damages for delays caused by it, and does not expressly provide for such a situation as has here arisen.

The general rule therefore applies, that where labor and material are to be furnished and rendered by the one party and to be paid for by the other, and the one furnishing the work, labor, or material is dependent to some extent upon the other party performing his part or providing for the prompt performance by others of a portion of the work, there arises by implication an obligation on such person situated as is the defendant here, not only to refrain from doing that which will interfere or impede the contractor in the performance of his part, but that it will also do all that which is reasonably necessary in order to enable the contracting party to so perform. For a failure in either respect damages can properly be awarded to the person so delayed or impeded. *Loehr v. Dickson,* 141 Wis. 332, 336, 124 N. W. 293; *Manistee I. Works v. Shores L. Co.* 92 Wis. 21, 28, 65 N. W. 863.

This was the rule adopted by the trial court in his charge to the jury.

It is true that under the contract here in question the defendant did not become a guarantor for the prompt and faithful performance by other subcontractors of their respective subcontracts, and mere proof of such failure or neg-

lect by such other subcontractor would not be sufficient of itself to place the burden upon the defendant of proving that it was free from fault in connection with delay or damage. This was also recognized by the trial court in charging the jury that they must find, in order to answer the questions as they did, that there was some direct interference by defendant or failure to do that which it could reasonably be expected to do under the circumstances to see that there was no interference by other subcontractors with the plaintiff's progress. While in this case there was much evidence of delay and apparently inexcusable neglect on the part of the other subcontractors by which the progress of the work was delayed, yet at no time during the progress of the trial did the defendant request the court to separate and exclude from the consideration of the jury such particular delays which might properly be traceable to the faults of such other subcontractors, rather than that which was directly caused by the defendant itself. Defendant relied all the way through the trial upon its broad claim, and upon which it elected to stand both in the court below and here, that no damages whatsoever for any delay could be recoverable, because of the provisions of the contract above quoted. No attempt was made to single out and separate the delay that was caused by reason of the injunctional proceedings preventing the wrecking and the excavating after wrecking of the Birchard Block on the northeast corner. Possibly, if such question had been so raised and presented to the court, it might have excluded from the consideration of the jury as an element of damages some at least of the time during which the work was so prevented from progress, there being no evidence in the record from which it could be held that the defendant was negligent in any way in looking after such proceedings or was responsible for the same.

Again, there were some delays to the work on account of the site being flooded at times, particularly for a certain period owing to a flood in the Milwaukee river, and still no

attempt by defendant to have such period or periods segregated from the rest.

There can be no question, however, but that, for the period at least of ten to fourteen days during which pile-driving was stopped by reason of the defendant insisting that the obligation was upon the plaintiff and not upon itself or some other subcontractor to remove the foundation walls of the building at the southeast corner of the site, there was a plain breach of the obligation of defendant toward plaintiff. For such period it could properly be chargeable with the consequent delay by its assuming to insist upon a position that was not warranted under its contract.

In any view of the case, therefore, there were some periods of delay during the continuation of the work when defendant should properly and beyond question be held chargeable for damages caused thereby to the plaintiff, and the record here presented makes it impossible for us to now carve out from this general finding as to the amount of damages such periods of time as might have been excluded.

The fourth and last proposition urged by the plaintiff on this appeal is that improper elements of damage were allowed to be considered by the jury. This includes rental value of plaintiff's plant during the periods of delay, and the value of the services of Mr. Gillen, the president, and Mr. Harrington, the secretary.

Plaintiff's secretary, Harrington, testified over objections that on account of the delay about three and one-half months' extra time was required of the services of Mr. Gillen, president and general manager, and of himself, and that such extra times were reasonably worth $2,049 and $983.57, respectively, aggregating $3,032.57.

The plaintiff is a going concern, with other work being undertaken and executed by it during the same period in which it was doing this work and without having employed or retained the services of either Mr. Gillen or Mr. Harrington particularly with reference to this contract, and, not hav-

ing actually paid them any more during that year than it would have otherwise, ought not to have such items considered in the nature of such special damages as could be charged against the defendant.

Express exceptions were also taken to the portions of the charge authorizing the jury to consider these substantial items, and it was prejudicial error to disregard such objections and exceptions.

As to the other elements of damage, the jury were permitted to consider the reasonable rental value of the equipment of the plaintiff for the period during which its use was interrupted, so far as this particular job was concerned, by the delays claimed to have been caused by defendant. Estimates were received as to what was the reasonable rental value of such equipment, consisting of scows, pile-drivers, and a tug, and computations were made from such estimated daily rental value of the various items of such equipment for the period from the 14th day of February, 1916, when the contract should have been completed, up to and including July 7th, when the last pile was driven, but crediting the defendant with the time when the equipment was actually used on such job as well as for such time as it was used on other work undertaken and carried on by plaintiff during the same period. It is now and for the first time urged by defendant that as to a portion of the time considered in the estimate as to the rental value of one or more of the scows used by plaintiff in loading, handling, and unloading the piles, such scows could not, under the testimony, be considered so in the service of the plaintiff with reference to this particular contract as to be considered a proper element of damage. This might well have been a proper objection on the trial, but we cannot now pick out particular portions of such elements some parts of which were proper, where no attempt was made to so pick them out on the trial.

We regret that the record on the question of damages is such that we cannot now finally dispose of this case.

On September 30, 1916, the plaintiff presented to defendant its claim for final payment for the balance under the contract for extras for the work done. In this application was the following: "Damages caused by delay to our work by your failure to have premises ready for us to proceed at time agreed, $2,500."

The account between the parties not having been settled, the following December the plaintiff took up with the architects of the building the question of the dispute between the parties hereto, and at that time, by letter of December 4th, they withdrew the item of $2,500 above mentioned and stating in effect that they had had an accurate auditing and account made and thereby determined that the amount of such damages for delay was greatly in excess of the $2,500 and amounted to over $16,000.

It appears that what was in the nature of a bill of particulars as to these items was, pursuant to some agreement between the respective counsel, furnished by plaintiff and referred to at various times during the trial, and it apparently contained a large number of items making up this $16,000. Such bill of particulars was not made a part of the record before us; and it has been a difficult matter to ascertain the particular items and amounts thereof which were before the jury in arriving at the amount of damages assessed by the latter at $7,713. The items, however, as can be picked out from the record as being before the jury, were about as follows:

| | |
|---|---:|
| Actual labor costs | $6,746 25 |
| Computed cost at time of entering contract at so much per lineal foot piling | 4,118 00 |
| Difference claimed as excess cost | $2,628 25 |
| Extra time of Mr. Gillen and Mr. Harrington | 3,032 57 |
| Extra liability insurance | 141 00 |
| Extra expense of operation of steam launch | 350 00 |
| Extra fuel | 215 00 |
| Cost for additional lines used on drivers | 350 00 |
| For towing defendant over, tugs | 74 00 |
| | $6,790 82 |

At the maximum prices as testified to by the witnesses, the rental value of the respective items of the equipment, estimating the rental value of the tug as including the crew, would total in round numbers $13,000, and at the minimum prices $8,300, making the totals of these and the above items between $15,000 and $20,000.

In these respective periods there was given separately the number of Sundays included. The rental value of the equipment for these included Sundays would be at the maximum prices about $2,500 and at the minimum prices about $1,800.

No suggestion was made in the charge nor request to so charge made, that such Sundays should not be included in the period for which damages were claimed, under the rule in *Raynor v. Valentin Blatz B. Co.* 100 Wis. 414, 76 N. W. 343, or in *Sentinel Co. v. A. D. Meiselbach M. W. Co.* 144 Wis. 224, 128 N. W. 861, where the court took judicial notice of the items there involved done on Sundays and held that no recovery could be had thereon, and we cannot, therefore, assume that such items were disregarded by the jury. Although the damages at less than one half of the above minimum were assessed, yet from the nature and the prominence given to the item of over $3,000 for the estimated value of the services of Mr. Gillen and Mr. Harrington by the rulings on the trial and by the charge, we cannot but feel that a substantial error was committed, and we cannot assume that such an item had been discarded by the jury in its computation.

We assume that the motion for judgment made upon the stipulation fixing the amount of claims at $8,275 was made under sec. 2892, Stats., although no reference to such statute is made in the briefs or in the record. In view of the construction we are now giving to the stipulation and its effect, we think the court may order the defendant to satisfy that part of the claim and might enforce such order as it enforces a judgment or provisional remedy.

We see no just reason why the defendant should delay

the payment of such amount while litigating the question of damages, and the trial court may therefore, when this record is remanded and upon application of plaintiff, so direct the defendant to satisfy the claim to the amount stipulated of $8,275, with interest thereon from June 1, 1917, so that payment of such admitted and just amount may be made forthwith in case further litigation is necessary.

We deem it proper to give the plaintiff the option of reducing the damages as found by the jury by the sum of $3,032.57, with interest on such reduced sum from July 7, 1916; otherwise a new trial to be granted upon the question of damages.

*By the Court.*—Judgment reversed, with directions to the court below to permit plaintiff to take a judgment wherein the damages as found by the jury shall be reduced to the sum of $4,680.43, with interest on such sum from July 7, 1916, and with the other items of such judgment as before, or, in case of the failure of plaintiff to exercise such option, then that a new trial shall be granted upon the question of damages; in the event of a new trial the plaintiff be permitted to have an order requiring the payment forthwith of $8,275, with interest thereon from June 1, 1917; appellant to have costs on this appeal.

On May 27, 1919, the court granted a motion by respondent for a rehearing and ordered a reargument on the following questions:

(1) Under the evidence before the court, is plaintiff entitled to recover for the services of Gillen and Harrington during the periods of delay?

(2) If not, what (if any) additional circumstances are there which might be brought out on another trial which would warrant such a recovery?

The following opinion was filed November 4, 1919:

PER CURIAM.    Upon the rehearing in this case the court is of the opinion that the questions presented on this appeal

were rightly decided. It is a conceded fact, however, that since the entry of the original judgment in the court below. the defendant company has gone into bankruptcy. For that. reason and on the application of appellant to that effect, it is ordered that the mandate of this court be modified so as to read as follows:

Plaintiff is permitted to file in this court, within twenty days from this date, its election to reduce the damages as found by the jury by the sum of $3,032.57, and that thereupon the judgment as then so modified be affirmed; in the event of. failure to so elect, the judgment will be reversed and a new trial granted on the question of damages, and in such event the plaintiff be permitted to have an order requiring the payment forthwith of the sum of $8,275 with interest thereon from June 1, 1917. Appellant to have costs on the appeal and on the motion for a rehearing.

On December 2,·1919, the court directed entry of the following:

The plaintiff having elected to consent to the modification of the judgment herein by reducing the damages found by the jury by the sum of $3,032.57, and such election having been filed in this court:

It is adjudged that the judgment be modified by reducing the same from $17,391.08 to $14,036.08, as of April 15, 1918, and as so modified be affirmed, appellant to have costs on this appeal and on the motion for rehearing.