STATE of Wisconsin, Plaintiff-Appellant,

v.

SERVICE ELECTRIC & SUPPLY, INC., Defendant,

INTEGRITY MUTUAL INSURANCE CO., Defendant and
Third-Party Plaintiff-Respondent,†

Robert J. ZARADA and Patricia J. Zarada,
Third-Party Defendants.

Court of Appeals

No. 80–2079. Submitted on briefs July 1, 1981.—
Decided August 5, 1981.
(Also reported in 310 N.W.2d 626.)

† Petition for review granted.

For the plaintiff-appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general.

For the defendant and third-party plaintiff-respondent the cause was submitted on the brief of *Bruce Gillman* of *Tomlinson, Gillman & Travers, S.C.* of Madison.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J. The State of Wisconsin appeals from a summary judgment denying the State damages for the claimed loss of services of an employee. Because Service Electric and Supply Company breached its contract, the State reassigned a field representative to provide necessary supervision for the work left incomplete by Service Electric. The State paid the field representative the same wage he would have been paid had he not been reassigned. However, if the field representative had not been reassigned, it is stipulated he would have been performing other necessary services for the State. The value of these other services would have been equal to the value of services actually performed on reassignment. The trial court held that since the field representative was paid no additional wage, the State suffered no loss. We believe that the State did suffer a loss through the loss of services, and we reverse.

The State entered into a contract with Service Electric. The terms of the contract stated that Service Electric would provide materials for and do the installation of

some heating and ventilating equipment at Camp Williams, Camp Douglas, Wisconsin. Integrity Mutual Insurance Company, as surety, executed a performance-payment bond on the contract.

The State performed its duties under the contract, but Service Electric breached the contract. After Service Electric's breach, the State provided Service Electric and Integrity Mutual with the required notice and lawfully terminated its employment of Service Electric. To complete the project, the State hired August Winters and Sons, Inc. and paid them from construction funds held as a retainage by the State. Also, the State had to transfer a field representative to provide necessary direction and control in the completion of the project. Service Electric's breach created the need for this direction and control, and the field representative would not have been transferred if Service Electric had not breached the contract.

If the State's field representative would not have been transferred, it is stipulated that he would have been working on other projects for the State. The State paid the field representative a fixed salary, and they would have paid him this same salary regardless of his assignment. The field representative did not receive any additional pay because of the reassignment.

The performance-payment bond required Indemnity Mutual to pay costs and damages which the State suffered because of failure to perform under the contract. Indemnity Mutual argued on summary judgment that the State did not suffer damage or loss because it did not have to pay any additional salary to its field representative. Relying on *Edward E. Gillen Co. v. John H. Parker Co.*, 170 Wis. 264, 171 N.W. 61 (1919), the trial court denied the State's claim for damages for the loss of its employee's services. The trial court held that the State suffered no loss because it paid no additional wages.

On appeal, the State argues that the *Gillen* case is not applicable. It contends that in *Gillen,* the supreme court did not consider the issue of lost employee services in.determining damage. The State contends that *Gillen* only holds a business is not damaged when its salaried employees expend gratuitous effort beyond normal working hours since the salaried employee's regular services have not actually been lost. We agree and find *Gillen* not applicable to this case.

## RECOVERY FOR LOST SERVICES

Whether or not *Gillen* applies to this case is a question of law. In reviewing questions of law addressed by the trial court, the reviewing court is not required to give special deference to the trial court's findings. *First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). The trial court is in no better position to reach a correct decision than is the appellate court. *Estate of Holcombe,* 259 Wis. 642, 646, 49 N.W.2d 914, 917 (1951). Under this standard of review, we believe the court misapplied *Gillen.*

In *Gillen,* the plaintiff corporation, a subcontractor, had contracted to furnish and drive piles for a new building. The contract specified that work was to begin on or before a certain date and was to be completed by a certain date. Time was of the essence. In addition, the court implied an agreement that the general contractor would do all reasonable and necessary acts to prevent others from interfering with the subcontractor's progress. The subcontractor encountered a series of delays because the general contractor had not taken affirmative action to prevent these delays. Consequently, the subcontractor sued the contractor for damages. His damages claim included a claim for the value of extra services provided by the president-general manager and his secretary. The

supreme court denied recovery because the company did not have to pay these employees additional wages. They were salaried employees who did not get overtime pay.

The trial court's decision in this case stated that *Gillen* also considered the issue of damages resulting from lost services. It stated that although *Gillen* contained no evidence indicating the employees would have performed other services absent the breach, it could be inferred they would have done so. However, the supreme court's decision in *Gillen* gives no indication that lost services were considered in determining damages. *Gillen* only decided that no proof existed that the gratuitous efforts of the salaried employees resulted in damage to the company.

Damages are given to put the plaintiff in as good a position financially as he would have been in but for the breach. *Schubert v. Midwest Broadcasting Co.*, 1 Wis. 2d 497, 502, 85 N.W.2d 449, 452 (1957). Before the breach by Service Electric, the State had the available services of the field representative and work for him to do. The breach compelled the State to reassign the field representative to help complete the project left incomplete by Service Electric's breach. Consequently, the State lost the services of the field representative while he was supervising the work. This loss of services damaged the State.

When it loses the services of its employees, a business can recover damages caused by breach of contract. Strong policy considerations support this proposition. The basic rules for measurement of damages often incorporate the idea that economic waste should be avoided and that damages should be minimized. D. Dobbs, *Handbook on the Law of Remedies* § 3.7 at 189 (1973). If the aggrieved party cannot cover potential losses caused by breach using his own employees, the aggrieved party's only other option is to cover by hiring outside em-

ployees to complete the work. This may be more costly to the injured party and result in a greater damage liability for the breaching party. Eliminating an option which has the potential to mitigate losses for the employer and the breaching party serves no benefit.

Also, the employer should not have to make the additional expenditure of hiring outside employees to recover damages for breach. The employer may not be financially strong enough to hire outside employees to complete unfinished work left undone because of the breach. If he is not in a strong enough position to hire outside workers, he may be left without an immediate remedy for the other party's breach.[1] Even if he can afford to hire outside employees, he may not be able to recover this extra amount expended if the breaching party has declared bankruptcy, a common reason for breach.

## THE STATE'S DUTY TO SUPERVISE

The respondent, Integrity Mutual, argues that the State cannot recover for assigning a field representative to provide direction and control. Integrity Mutual relies on sec. 16.85, Stats., which requires the Department of Administration to provide supervision for construction work, and sec. 16.88, Stats., which prevents the State from charging for such work. This argument, however, ignores the facts of this case.

Integrity Mutual does not allege that the State had failed to provide this supervision prior to Service Electric's breach. The facts indicate that after the breach,

---

[1] This is true if the business does not have the money to hire outside employees to begin the work immediately. If we were to follow the trial court's ruling in this case, an employer's use of his own employees to complete the work would prevent recovery for damages in a suit for breach of contract. This leaves the business without an acceptable alternative. They would have to live with their loss temporarily.

the State was required to provide additional direction and control of the project. This would not have been necessary but for the breach. Integrity Mutual, as surety, is liable for the excess costs created by the breach.

*By the Court.*—Judgment reversed.