STATE of Wisconsin, Plaintiff-Appellant,

v.

SERVICE ELECTRIC & SUPPLY, INC., Defendant,

INTEGRITY MUTUAL INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Respondent-Petitioner,

Robert J. ZARADA and Patricia J. Zarada, Third-Party Defendants.

Supreme Court

*No. 80–2079. Argued February 1, 1982.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 390.)

For the defendant-petitioner there were briefs by *Bruce Gillman* and *Tomlinson, Gillman & Travers, S.C.,* of Madison, and oral argument by *Bruce Gillman.*

For the plaintiff-appellant the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J. This is a review of a decision of the court of appeals, *State v. Service Electric & Supply, Inc.,* 104 Wis. 2d 66, 310 N.W.2d 626 (Ct. App. 1981), which reversed a judgment entered by Dane

county circuit court Judge William D. Byrne denying the state of Wisconsin compensation for the claimed loss of services of a supervisory employee which resulted from a breach of contract. We affirm the decision of the court of appeals and hold that loss of an employee's services is properly compensable under the circumstances of this case.

The parties stipulated to the material facts in this breach of contract action and submitted the issue to the trial court on motions for summary judgment. The stipulated facts reveal the following chain of events. On June 21, 1974, the state of Wisconsin signed a contract with Service Electric and Supply, Inc. (Service), whereby Service would provide materials and installation of heating and ventilating equipment at Camp Williams in Camp Douglas, Wisconsin, for the contract price of $22,127. On June 24, 1974, Integrity Mutual Insurance Co. (Integrity), as surety, executed a performance payment bond. Sometime before completion of the contract, but after work had been undertaken, Service was unable to complete the project, and the state, having given proper notice, terminated the contract. The state then engaged the services of a second contractor to complete the project, which was accomplished within the originally allotted time period. The second contractor was paid in full from retained construction funds held by the state. These funds are identified as retainage in sec. 16.855(19), Stats.

The issue before this court involves the state's claim for damages against Integrity on the performance payment bond for the salary and travel expenses of a salaried field supervisor whose services were stipulated by the parties to be "necessary for the completion of the project subsequent to the time that the contractor, Service, did not perform its part of the said contract," and "the said field representative of the Plaintiff would have

been working on other projects on behalf of the Plaintiff, which work would have had a reasonable value of $3,602.25." Integrity has agreed to pay $120.90 plus interest for the travel expenses of the field supervisor, and this cost is not disputed. The parties stipulated that the $3,602.25 claimed for the loss of the supervisor's services was a fixed salary which would have been paid to the field supervisor regardless of the project on which he was working and regardless of whether Service breached the contract.

The state at oral argument before this court asserted that the $3,602.25 claim involved the supervisor's services in finding another contractor to complete the job, not in supervising the quality of the work pursuant to sec. 16.85(1), Stats. The state acknowledges that it did not hire another employee to work on the projects the supervisor for the Camp Douglas project would have worked on had it not been for Service's breach.

The parties stipulated that the sole, legal issue before this court is whether Integrity is liable for the normally incurred salary of the state supervisor assigned to the Camp Williams project which would have been paid regardless of whether Service "completed or failed to complete the underlying contract."

The circuit court, finding *Edward E. Gillen Co. v. John H. Parker Co.,* 170 Wis. 264, 171 N.W. 61, 174 N.W. 546 (1919), controlling on this issue, held that the state could not recover normal salary expenses of an employee. The court of appeals reversed, distinguishing the *Gillen* decision on its facts, and found that when a business loses the service of an employee, it can recover damages caused by breach of contract. 104 Wis. 2d at 70. The court of appeals found policy considerations highly persuasive.

"If the aggrieved party cannot cover potential losses caused by breach using his own employees, the aggrieved

party's only other option is to cover by hiring outside employees to complete the work. This may be more costly to the injured party and result in greater damage liability for the breaching party. Eliminating an option which has the potential to mitigate losses for the employer and the breaching party serves no benefit.

"Also, the employer should not have to make the additional expenditure of hiring outside employees to recover damages for breach. The employer may not be financially strong enough to hire outside employees to complete unfinished work left undone because of the breach. If he is not in a strong enough position to hire outside workers, he may be left without an immediate remedy for the other party's breach. Even if he can afford to hire outside employees, he may not be able to recover this extra amount expended if the breaching party has declared bankruptcy, a common reason for breach." 104 Wis. 2d at 70–71 (footnote omitted).

On review Integrity argues that recovery in this case is inconsistent with the *Gillen* decision where this court, in 1919, held that a subcontractor was not entitled to collect for the reasonable value of the services performed by its president and general manager. Integrity argues that, while the *Gillen* decision did not speak to the issue of *lost* employee services in determining damages, the respondent's brief in *Gillen* reveals this point was the basic thrust of the respondent's arguments, and accordingly the issue was before the court. From this, Integrity concludes that, because the issue of liability for services was decided against the petitioner in *Gillen,* stare decisis compels a similar conclusion in the instant case.

Integrity argues, citing cases from other jurisdictions, that the modern trend of the law is to disallow recovery for loss of services; that awarding such damages ignores the fundamental principle of the law of damages that the damaged party is not entitled to be placed in a better position because of the damage award than he would have been had the contract been performed.

Because the state has a duty under secs. 16.85(1) and 16.88, Stats.,[1] to provide free supervision on construction projects, Integrity maintains that this prevents the state from charging for such work. This statutory duty gave rise to Integrity's expectation that the state would provide free supervision until the project's completion. To be recoverable, damages must have been within the parties' contemplation at the time the contract was signed, and according to Integrity the cost of supervision by the state's employee was not within such contemplation.

The state of Wisconsin argues that damages are recoverable for the loss of the supervisor's services because they are an extra cost of completing the contract resulting from the breach. The state distinguishes *Gillen* be-

---

[1] Secs. 16.85(1) and 16.88, Stats., provide:

"16.85 **Department of administration; powers, duties.** The department of administration shall exercise the powers and duties prescribed by ss. 16.85 to 16.91:

"(1) To take charge of and supervise all engineering or architectural services or construction work as defined in s. 16.87 performed by, or for, the state, or any department, board, institution, commission or officer thereof, including nonprofit-sharing corporations organized for the purpose of assisting the state in the construction and acquisition of new buildings or improvements and additions to existing buildings as contemplated under ss. 13.488, 36.09 and 36.11, except the engineering, architectural and construction work of the department of transportation and the engineering service performed by the department of industry, labor and human relations, department of revenue, public service commission, department of health and social services and other departments, boards and commissions when the service is not related to the maintenance, construction and planning of the physical properties of the state;"

"16.88 **Charges against projects.** The cost of services furnished pursuant to s. 16.85(2) to (4), (6) and (7) shall be charged to and paid out of available funds for the respective projects, whenever in the judgment of the secretary the charges are warranted and the cost of the services can be ascertained with reasonable accuracy."

cause there was no evidence in that case that the employees would have been performing other valuable work. The state concludes that the stipulated facts, "[t]hat in the event the aforedescribed project had been completed in a timely manner by Service, the said field representative of the Plaintiff would have been working on other projects on behalf of the Plaintiff, which work would have had a reasonable value of $3,602.25," reveal that the cost of employee services is properly compensable. The state clarified at oral argument that the cost of the field supervisor's services related to the time expended in locating another contractor to complete the job, not in supervising the quality of the work performed. The state conceded at oral argument that had the supervision of construction been the basis for its claim for nonperformance damages, "that might have been a different case." The state clarified at oral argument that the loss of the employee's services was not incurred as a result of a delay in the project completion date; in fact, the job was completed on time.

In resolving the issue before us, we examine the decision in *Gillen* to ascertain whether it is controlling. Integrity urges us to examine the parties' briefs in *Gillen* to supplement that decision in regard to any stare decisis effect. According to Integrity, because the issue of compensation for loss of services was briefed by the parties, "it should be crystal clear that this Court did consider the element of loss of services" even though the court's opinion was silent on that specific issue. The principle of stare decisis limits us to the court's opinion, and we will not infer that the element of lost services was reached when the opinion was silent in this regard.

We find the *Gillen* case distinguishable from the situation at bar. In *Gillen,* the plaintiff company sought compensation for the services of its president and secretary due to the defendant's breach in failing to complete a

contract on time. The plaintiff's ability to recover was briefly addressed by the court:

"Plaintiff's secretary, Harrington, testified over objections that on account of the delay about three and one-half months' extra time was required of the services of Mr. Gillen, president and general manager, and of himself, and that such extra times were reasonably worth $2,049 and $983.57, respectively, aggregating $3,032.57.

"The plaintiff is a going concern, with other work being undertaken and executed by it during the same period in which it was doing this work and without having employed or retained the services of either Mr. Gillen or Mr. Harrington particularly with reference to this contract, and, not having actually paid them any more during that year than it would have otherwise, ought not to have such items considered in the nature of such special damages as could be charged against the defendant." 170 Wis. at 282–83.

*Gillen* really dealt with a claim of damages for "extra" services as opposed to lost services of employees. In *Gillen* the company officers received a fixed salary which was not dependent upon the number of hours worked. In other words, any "extra" time expended by these employees would not be directly reflected in monetary remuneration. The realities of corporate business reveal that company executives frequently put in "extra" time when problems occur, and this is expected as a part of the job.

*Gillen* further reveals that, during the period of delay, "other work [was] being undertaken and executed" and that the plaintiff was "a going concern." 170 Wis. at 282. This situation would appear opposite of that where other work went undone because of a breach of contract. Furthermore, the employees whose services were claimed as damages in *Gillen* were not specifically assigned to duties related to the contract which was breached. Indeed, their services, by virtue of their company rank,

required the performance of general supervisory responsibilities as they arose in contrast to the duties which were assigned to specific job performing employees.

In the instant controversy, the field supervisor's services were assigned specifically to the Service contract. The stipulated facts reveal that, had the supervisor not had to deal with the problems provoked by Service's breach of the contract, he would have been working on other projects for the state. Oral argument revealed that the state did not hire another employee to work on those other projects. Integrity, in its court of appeals brief, concedes that had the state added an extra man to its staff to render the services at issue, "there wouldn't be any question about [the state's] right to collect the additional cost." While it is true that both the employee in the instant controversy and the employees in *Gillen* were salaried employees paid regardless of the work they did, in the case at bar the employee's services related to other projects were stipulated to have been lost. *Cf. Walker Manufacturing Co. v. Henkel Construction Co.*, 346 F. Supp. 621, 633 (N.D. Iowa 1972) (company denied recovery of salaries of three of its workers whose services were expended supervising the replacement of a defective roof installed by the original contractor because "[t]here was no sufficient indication at trial as to what these employees would have been doing had they not been working on the roof problem. . . . [T]he amount . . . [of time the] employees spent working on this project has not been shown as an expense solely attributable to [the breach]"). We view this lack of loss of services and lack of showing expense solely attributable to the breach as significant distinctions from the case we are considering. Thus, we hold *Gillen* is not controlling in our consideration of the issue of the compensability of lost services.

Integrity complains that the court of appeals decision violated one of the most fundamental principles of the common law of damages, that "[t]he fundamental idea in allowing damages for breach of contract is to put the plaintiff in as good a position financially as he would have been in but for the breach." *Schubert v. Midwest Broadcasting Co.,* 1 Wis. 2d 497, 502, 85 N.W.2d 449 (1957). Integrity argues that the state has not suffered compensable loss because the supervisor was paid the same salary for the same kind of work which would have been the case had there been no breach of contract and that to allow recovery would put the state in a better position than it would have been in if there had been no breach.

In evaluating the merit of Integrity's argument, we examine the stipulation.[2] When the parties stipulated that if the project had been completed in a "timely manner" the field representative would have been working on other projects for the plaintiff, it is obvious the project was not completed within the on-the-job construction time contemplated by the parties. Project supervision relates to project work days, and therefore actual construction time is something different than the job completion deadline date. The state clarified at oral argument, without objection from Integrity, that the project was completed on time, and we accept this as an acknowledgment that completion occurred on or before the

---

[2] Several pertinent stipulations read as follows: Stipulated fact number 11 reveals "[t]hat the Plaintiff's claim is for the salary and travel of one of its salaried employes, which sums were *expended as a result of Service's not performing its part of the said contract.*" (Emphasis added.) Similarly, stipulated fact number 14 states the supervisor's services were "necessary for the completion of the project subsequent to the time the contractor, Service did not perform its part of the said contract." Stipulated fact number 16 reveals that, if the Camp Douglas project would have been completed by Service, the state's supervisor "would have been working on other projects on behalf of the [state]."

completion date set forth in the contract. Therefore, the stipulation reference to lack of completion in a "timely manner" deals with the state's having to invest more time in getting the project completed than the parties contemplated at the time the contract was executed. It is this extra time devoted to this project because of the breach by Service which deprived the state of the field representative's services on other projects that has been valued by stipulation at $3,602.25.

Clearly, the parties have measured the state's loss at a fixed amount resulting from the deprivation of services attributable to the breach by Service. Compensating the state for this stipulated loss is not putting the state in a better position than it would have been in if no breach of contract had occurred. Compensating the state in this agreed amount is necessary to make the state whole and to restore it to the position it would have been in had the breach not occurred. Such a result is precisely consistent with the legal premise of *Schubert* which declared that the fundamental idea in allowing damages for breach of contract is to put the plaintiff in *as good a position* financially as he would have been in but for the breach. *Id.* at 502. Here the field supervisor received the same wage irrespective of the breach; however, the parties stipulated that the state was deprived of services which had a value of $3,602.25. This loss is a direct result of the breach by Service and therefore compensable, and Integrity contracted for that liability when it issued the performance payment bond.

We note that, as the court of appeals articulated in its opinion, policy considerations support our conclusion. We conclude that the state's loss of services of the supervisor is a compensable loss for which the state is entitled to recovery in the stipulated amount of $3,602.25.

*By the Court.*—The decision of the court of appeals is affirmed.